**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JACOB LEE INGERSOLL, | ) | |
| #R-60318, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 17-cv-00046-NJR** |
| | ) | |
| DAVID B. PHELPS | ) | |
| and UNKNOWN CORRECTIONAL | ) | |
| OFFICER, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Jacob Ingersoll, an inmate who is currently incarcerated at Sheridan Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 against Officer David Phelps (internal affairs officer) and Officer John/Jane Doe (unknown correctional officer) for violating his constitutional rights at Menard Correctional Center in 2015. (Doc. 1). According to the Complaint, Officer Doe allowed two masked inmates to enter Plaintiff's cell at Menard and attack him on April 17, 2015. (Doc. 1, p. 5). Officer Phelps investigated the assault but ultimately took disciplinary action against Plaintiff. *Id.* In addition to the assault, Plaintiff endured 30 days in administrative segregation, 90 days in disciplinary segregation, and a delayed prison transfer. *Id.* During this same time period, he was denied access to mental health services at the prison. *Id.* Plaintiff now seeks monetary damages against Officers Doe and Phelps for violating Plaintiff's rights under the Eighth and Fourteenth Amendments. (Doc. 1, p. 6).

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in

which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

    (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

        (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

        (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On April 17, 2015, an unknown officer at Menard ("Officer Doe") allowed two masked inmates to enter Plaintiff's cell and assault him. (Doc. 1, p. 5). The inmates beat Plaintiff until he nearly lost consciousness. *Id*. He sustained severe head injuries during the attack. *Id*. Plaintiff was immediately taken to Menard's Health Care Unit ("HCU") for treatment and photographs of his injuries. *Id*. He remained there until he recovered, and he complains of no lingering injuries. *Id*.

While in the HCU, Officer Phelps interviewed Plaintiff about the assault. (Doc. 1, p. 5). Plaintiff was then placed in administrative segregation on investigative status for 30 days, while Officer Phelps continued to investigate the matter. *Id*. During several interviews with Plaintiff, Officer Phelps suggested that Plaintiff was involved in prison tattoo work and that a dispute over this work resulted in his attack. *Id*. Plaintiff denied any involvement in tattoo work. *Id*.

2

Officer Phelps nevertheless issued Plaintiff a disciplinary ticket for undisclosed rule violations. (Doc. 1, p. 5). Plaintiff was found guilty of the violations and punished with 90 days in disciplinary segregation. *Id*. His transfer to Sheridan was also "terminated"[1] as part of his punishment. *Id*.

During the four months he spent in segregation, Plaintiff was denied access to mental health professionals at the prison. (Doc. 1, p. 5). He filed several grievances to complain about this deprivation, but those grievances were either destroyed or disappeared. *Id*.

Plaintiff now claims that the conduct of Officers Doe and Phelps violated his right to be free from cruel and unusual punishment under the Eighth Amendment and his due process rights under the Fourteenth Amendment. (Doc. 1, p. 5). Plaintiff seeks monetary relief against these individuals. (Doc. 1, p. 6).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* Complaint into the following enumerated counts:

**Count 1 -** Eighth Amendment claim against Officer Doe for failing to protect Plaintiff from the inmate attack that occurred on April 17, 2015.

**Count 2 -** Fourteenth Amendment claim against Officer Phelps for depriving Plaintiff of a protected liberty interest without due process of law by issuing him a false disciplinary ticket that resulted in his punishment with segregation and a delayed prison transfer.

**Count 3 -** Eighth Amendment claim against both defendants for denying Plaintiff mental health treatment during his four months in segregation at Menard.

**Count 4 -** Fourteenth Amendment due process claim against both defendants for mishandling Plaintiff's grievances.

---

[1] It appears that the transfer was actually delayed, not terminated, because Plaintiff is now housed at Sheridan.

The parties and the Court will continue using these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding their merits.

As discussed in more detail below, Count 1 against Officer Doe survives screening and is subject to further review against this unknown defendant, once he or she is properly identified and served with this lawsuit. Count 2 against Officer Phelps and Count 3 against both defendants shall be dismissed without prejudice for failure to state a claim upon which relief may be granted. Finally, Count 4 states no claim for relief and shall be dismissed with prejudice.

### Claim Subject to Further Review

### Count 1

The Complaint states a viable Eighth Amendment claim against Officer Doe for failing to protect Plaintiff from the inmate assault that occurred on April 17, 2015. To state a failure-to-protect claim, Plaintiff must allege that (1) he was incarcerated under conditions posing a substantial risk of serious harm (*i.e.*, an objective standard), and (2) the defendant acted with deliberate indifference to that risk (*i.e.*, a subjective standard). *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Complaint satisfies both components of this claim for screening purposes.

As for the objective component, the Seventh Circuit has held that a generalized risk of violence does not support an Eighth Amendment claim. *Brown*, 398 F.3d at 909; *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Plaintiff must allege a "tangible threat to his safety or well-being." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). The threat described in the Complaint, *i.e.*, two masked inmates with access to Plaintiff's cell, satisfies this requirement for screening purposes.

The subjective component of this claim is satisfied where a prison official knows that an attack is "almost certain to materialize if nothing is done." *Brown*, 398 F.3d at 911. A liberal

construction of the Complaint leads to this conclusion. Plaintiff alleges that the "two masked inmates were allowed access to [his] cell by [Officer Doe]." (Doc. 1, p. 5). It stands to reason that Officer Doe knew that an attack was "almost certain to materialize if nothing [was] done" to stop the two masked inmates from entering Plaintiff's cell on April 17, 2015. *Brown*, 398 F.3d at 913.

Both components of this Eighth Amendment claim are satisfied for screening purposes. Accordingly, Count 1 is subject to further review against Officer Doe. Instructions for identifying this defendant with particularity and serving him or her with this lawsuit are set forth below.

### Claims Subject to Dismissal

### Count 2

The Complaint states no colorable claim against Officer Phelps for issuing Plaintiff a false disciplinary ticket. The receipt of a false disciplinary ticket, alone, does not give rise to a due process violation. "[D]ue process safeguards associated with prison disciplinary proceedings are [usually] sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995) (citations omitted).

These due process safeguards typically include: (1) advance written notice of the charges against the plaintiff; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). Plaintiff mentions no due process violations that occurred in connection with his disciplinary hearing.

No due process protections are triggered in the first place, however, unless Plaintiff had a protected liberty interest in avoiding segregation. A protected liberty interest arises only when Plaintiff's confinement in segregation "impose[s] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts consider two factors when making this determination: "the combined import of the duration of the segregative [sic] confinement *and* the conditions endured." *Id*. at 743 (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009)) (emphasis in original). In other words, a liberty interest may arise if the length of confinement in segregation is substantial and the record reveals that the conditions of confinement were unusually harsh. *Marion*, 559 F.3d at 697-98, n. 2.

Plaintiff remained in segregation for a total of four months. Only three months were spent in disciplinary segregation. This stay is not particularly long. Unless the conditions were unusually harsh, it does not appear that a protected liberty interest was even at stake or that due process protections were triggered. Because Plaintiff offers no insight into the conditions of his confinement in segregation or the due process violations that occurred at his prison disciplinary hearing, the Court cannot fully analyze this claim. For these reasons, Count 2 shall be dismissed against Officer Phelps without prejudice.

### Count 3

The Complaint supports no Eighth Amendment claim against the defendants for denying Plaintiff mental health treatment during his four months in segregation at Menard. Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they respond to an inmate's serious medical needs with deliberate indifference. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To state a claim, "[t]he plaintiff must show that (1) his medical need was serious (*i.e.*, an objective standard), and (2) state officials acted with deliberate indifference to his medical need (*i.e.*, a subjective standard). *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

In order to proceed with this claim, Plaintiff must set forth allegations indicating that his mental health needs were objectively serious. *Gutierrez*, 111 F.3d at 1369. He offers no information about his mental health needs in the Complaint. Relevant information includes whether a medical professional diagnosed Plaintiff with a mental illness prior to his placement in segregation, whether a medical professional determined that treatment was necessary, whether the need for treatment would have been obvious to a layperson even if not recommended or diagnosed by a professional, whether necessary treatment was withheld; and whether Plaintiff's mental illness significantly impacted his day-to-day functioning in segregation. *Id*. Absent any allegations to this effect, the Court finds that the objective component of this claim is not satisfied.

In order to satisfy the subjective component of this claim, Plaintiff must demonstrate that the defendants responded to his serious medical need(s) with deliberate indifference. A prison official who "knows that [an] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it" acts with deliberate indifference. *Farmer*, 511 U.S. at 847. Plaintiff omits reference to either defendant in connection with this claim. The Court cannot find any suggestion in the Complaint that Officer Doe, Officer Phelps, or anyone else responded to Plaintiff's mental health needs with deliberate indifference. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation").

The Complaint lacks sufficient allegations to satisfy either component of this Eighth Amendment claim. Accordingly, Count 3 shall be dismissed without prejudice against both defendants.

**Count 4**

The Complaint supports no Fourteenth Amendment due process claim against the defendants for destroying, delaying, or ignoring Plaintiff's grievances. (Doc. 1, p. 5). Prison grievance

procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

Similarly, Plaintiff states no claim against the defendants for impeding his access to the courts by preventing him from exhausting his administrative remedies. If a prisoner can establish that administrative remedies were unavailable under the Prison Litigation Reform Act, the prisoner is excused from the requirement that he exhaust all administrative remedies before filing suit in federal court. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). In other words, a prison official's destruction, delay, or disregard of a prisoner's grievances does not actually preclude the prisoner from filing suit. No claim arises from the mishandling of Plaintiff's grievances. Accordingly, Count 4 shall be dismissed with prejudice against the defendants.

### Identification of Unknown Defendant

Plaintiff shall be allowed to proceed with Count 1 against the unknown correctional officer ("Officer John/Jane Doe"), who allowed two masked inmates entry into Plaintiff's cell at Menard during the 7 a.m. – 3 p.m. shift on April 17, 2015. Before service of the Complaint can be made on him or her, this individual must be identified with particularity. Where a complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the plaintiff should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez*, 577 F.3d at 832.

In this case, the Warden of Menard Correctional Center shall be added as a defendant, in his or official capacity only, for the sole purpose of identifying this defendant. The warden shall respond to informal or formal discovery aimed at identifying Officer Doe. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of this defendant is discovered, Plaintiff

shall file a Motion for Substitution of Parties, in order to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

**Pending Motion**

Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 2) shall be addressed in a separate Order of the Court.

**Disposition**

The Clerk is directed to **ADD** the **WARDEN of MENARD CORRECTIONAL CENTER (in his or her official capacity only)** as a defendant in the Case Management/Electronic Case Filing ("CM/ECF") system and **SUBSTITUTE** Defendant **OFFICER JOHN/JANE DOE** in place of Defendant **UNKNOWN CORRECTIONAL OFFICER** in CM/ECF.

**IT IS HEREBY ORDERED** that **COUNT 1** against Defendant **OFFICER JOHN/JANE DOE** shall receive further review once this unknown defendant is properly identified in a Motion for Substitution of Parties.

**IT IS FURTHER ORDERED** that **COUNT 2** against Defendant **OFFICER PHELPS** is **DISMISSED** without prejudice, **COUNT 3** against both defendants is **DISMISSED** without prejudice, and **COUNT 4** against both defendants is **DISMISSED** with prejudice, all for failure to state a claim upon which relief may be granted.

With respect to **COUNT 1**, the Clerk of Court shall prepare for Defendant **OFFICER JOHN/JANE DOE**, once identified, and the **WARDEN of MENARD CORRECTIONAL CENTER** (in his or her official capacity only):  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the

Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that service shall not be made on Defendant **OFFICER JOHN/JANE DOE** until such time as Plaintiff has identified this defendant by name in a properly filed Motion for Substitution of Parties. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

With respect to a defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a plan for discovery aimed at identifying the unknown defendant.

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should*

10

*all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 7, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**